Lawrence J. Tonetti, J.
This is a motion to reargue brought by the People following this court’s granting of a motion to controvert a search warrant because of perjured testimony (People v Alfinito, 16 NY2d 181). It is the People’s position that even assuming, arguendo, that perjury existed it was not of such a nature as to require the controversion of the warrant.
This court held extended hearings to determine the original motion to controvert the warrant. The following findings of fact were made:
In December of 1973, the defendant, William Callahan, and *1084 the informant, Geraldine Zartman, had known each other for approximately 10 years. During this period of time, their relationship had been intimate and photographs and movies were taken by the defendant of Miss Zartman in compromising poses. Prior to the issuance of the warrant, Miss Zartman, evidently considering marriage to someone else, asked Callahan to return the pictures in his possession. When he refused she determined to make use of the judicial processes to accomplish her goal, i.e., the return of the above-mentioned photographs. Thus, she went to the police, where she spoke to Detective Missailidis, and lodged a complaint alleging that Callahan had coerced her to take a Florida vacation with him in the summer of 1973. In her conversation with Detective Missailidis she apprised this officer of the nature of her prior relationship with Callahan; of the existence of the photographs and movies and her desire to obtain them and finally that when she had been in Callahan’s residence approximately four or five months earlier she had seen contraband items, to wit: weapons, pills and marijuana.
This officer, seemingly unimpressed by the coercion charge, given the prior relationship of the principals, was nevertheless intrigued by her story of seeing weapons and other contraband. Consequently, the following day, Miss Zartman was taken to an Assistant District Attorney in the Bronx for the purpose of determining the feasibility of obtaining a search warrant for the Callahan premises. There she was informed that her observations were too remote in time to justify a warrant but that if she would return and make new observations, a warrant could be obtained.
At this point, the matter was left for approximately one month. In the interim, Miss Zartman had lodged a rape complaint against Callahan. No police action was taken as a result of this complaint.
At the end of January, 1974, Callahan allegedly called Zartman and asked for a date. Miss Zartman was unable to recall whether she had any advance contact with law enforcement authorities in regard to what she need do. In any event, Miss Zartman returned to Callahan’s home where they engaged in further sexual activities and she allegedly made fresh observations of contraband.
The following day, Miss Zartman apprised Detective Missailidis of her alleged observations at Callahan’s home and as a consequence was again taken to the District Attorney’s office *1085 and finally brought before a Judge of this court in an effort to obtain a warrant. Detective Missailidis offered his own affidavit in which he stated that an unnamed complainant would testify before the court in support of the application for the search warrant. No attempt was made to establish Miss Zartman’s credibility on the affidavit itself. He does state he made observations of defendant in his garage and that there were motorcycles in the garage. The observations made by Detective Missailidis in no way corroborated the fact that these motorcycles were stolen.
In addition to this affidavit, Miss Zartman testified personally and under oath before the issuing Judge. It must be noted that an attempt was made to establish her credibility as the District Attorney presenting the case asked her such questions as how long she had lived in the Bronx, whether she went to church, did she have children, did she do volunteer work in the community and whether she had been arrested. The overall effect of these questions was to portray Miss Zartman as a fine, upstanding member of the community with no direct interest in the outcome of the case. At that time, the District Attorney or at least Detective Missailidis, who was personally present at all times, knew first hand of the prior relationship between the two principals, of the two criminal complaints lodged by Miss Zartman against Callahan, of the existence of the photographs and movies and Zartman’s desire for their return and, finally, that her first interview with an Assistant District Attorney had provided her with knowledge of what was required by way of recent observations in order to obtain a search warrant. None of these facts was brought to the attention of the issuing Judge.
Miss Zartman then testified that she had seen contraband in Callahan’s apartment. It is this testimony which the court has found to be perjured after a full scale hearing. The defense produced witnesses who testified that Miss Zartman had confessed to lying in order to secure the warrant and bring about return of her pictures. This testimony was corroborated by a tape made by the People, which clearly demonstrated that one of the defense witnesses informed Detective Missailidis that Miss Zartman had lied, long before she was called to testify at the hearing. Further, although Detective Missailidis testified that when the warrant was executed the contraband was found substantially where Zartman had predicted, the inventory list made contemporaneously with the *1086 execution by another police officer shows considerable discrepancies and in fact conforms much more closely with where the defendant said his property was located, when he testified at the hearing. The warrant was issued by the Judge with the accompanying statement, that having read the affidavit and heard the testimony of the confidential informant he was satisfied that probable cause existed.
The issue presented for the court’s resolution is the following: What is the effect of perjury by an informant who commits this perjury while testifying under oath in support of the issuance of a search warrant?
The issue can be immediately narrowed in scope. In People v Alfinito (16 NY2d 181, supra), the Court of Appeals held that where there is perjury by the affiant in the affidavit supporting the warrant the evidence seized pursuant to such warrant should be suppressed. Conversely, in People v Solimine (18 NY2d 477, see, also, People v Slaughter, 37 NY2d 596), the same court held that where perjury by an informant is incorporated in good faith into the police officer’s affidavit in support of the warrant, the warrant is beyond attack. What we deal with here is a hybrid situation, where the perjury is neither by the affiant, nor incorporated in good faith in the officer’s affidavit. Rather it is by an informant whose sworn testimony before the issuing Judge provides the very basis for probable cause and thus the issuance of the warrant.
The rationale of Alñnito and Solimine taken in conjunction is clear. The Court of Appeals is limiting any inquiry into perjurious testimony to those cases where the perjury directly resulted in the issuance of a warrant. Where the perjury is outside the materials reviewed by the issuing court in determining, the existence of probable cause the warrant is beyond attack. Any other rule would result in a plethora of minitrials testing the accuracy of informants. The People, however, would further limit the scope of review. They contend that as this is a motion to suppress evidence only improper action by public servants should be reviewed even where, as here, the testimony of a private citizen is placed directly before the issuing Judge to establish probable cause. This view is premised on the theory that constitutional proscriptions against illegal search and seizure apply only'to illegality attributable to law enforcement officials and not to private citizens. This court agrees with the theory but disagrees with its application here.
*1087 In People v Slaughter (supra), the Court of Appeals makes the statement that motions of this type should be limited to examination of the police officer’s affidavit. However, it must be remembered that the fact pattern here is highly unusual. In the great majority of search warrant cases, the information provided by informants is incorporated into the affidavit of the investigating police officer and this affidavit forms the basis of probable cause. Here, law enforcement officials chose to present the informant to the issuing Judge personally and have her testimony establish probable cause. Thus, the precise legal relationship between the affidavit of the police officer and the testimony of the informant must be examined.
CPL 690.05 provides that a warrant may be issued only on the sworn written statement of a public servant. CPL 690.40 states that the issuing Judge may examine under oath any person, who may possess information pertinent to the determination of the application. Thus, these two factors taken together may provide the requisite probable cause for the issuance of the warrant. (People v Brown, 46 AD2d 590; People v Peterson, 47 AD2d 431), but it is the public servant, who bears the ultimate responsibility for establishing cause as the warrant may issue only on his application.
In such a situation, it is the view of this court that the informant’s testimony must be viewed as part of the public servant’s application. Since CPL 690.05 provides that a warrant may issue only on the application of a public servant, where the People choose to rely on the personal testimony of the informant, this testimony must be deemed part of the public servant’s application.
It must be noted that in the instant case, Missailidis’ affidavit standing alone would fail to support the warrant. The informant is unnamed in the affidavit and no attempt is made to establish her credibility (Aguilar v Texas, 378 US 108). In People v Hicks (38 NY2d 90), the Court of Appeals held that in the case of a named citizen informant, the People need not meet the credibility prong of the Aguilar test. However, in this case, the informant is unnamed and the issuing Magistrate would have no way of determining her credibility without recourse to her sworn testimony. Furthermore, the fundamental logic of the Hicks decision is that the citizen informant should be believed because this type of informant has no self-interest in the determination of the matter as opposed to a police informant (see, also, United States v Unger, 469 F2d *1088 1283). On the facts of this case, it is clear that the informant had a definite interest in the determination, that this fact was known to the police and was intentionally withheld from the issuing Judge. Surely, if the People intend to rely on the inherent credibility of a disinterested informant, they have a duty of disclosure when they know for fact that the informant has great interest in the outcome.
In his affidavit, Missailidis states: "that your deponent has been informed by the complainant, known and identified to him and who will give identification and oral testimony to the judge or justice who is to determine the existence of probable cause for the annexed warrant”. Clearly, he intends to incorporate by reference the testimony of Miss Zartman together with his affidavit for the purpose of determining the existence of probable cause. In the answering papers on the original motion, the People candidly admit that in determining the issue of probable cause, the Judge "relied in the main on the sworn testimony of the informant”. Thus, the two items are indisputedly interrelated in supplying the foundation for a finding of probable cause for a warrant to issue.
In summation, it is this court’s holding that in this limited fact situation, where the People rely on the combined effect of a police officer’s affidavit and an informant’s sworn testimony to establish probable cause the two must be viewed as one entity and that entity is the application for the warrant. As only a public servant may make on application for a warrant, the entity must be viewed as the act of the public servant. As such, it is susceptible to attack and since this court has already determined that perjury existed in the testimony of the informant, the warrant must be controverted. As the Court of Appeals said in Alfinito (16 NY2d 181, 185, supra): "Modern thought which produced the decision in Mapp v Ohio (367 US 643) would make incongruous any holding that a search warrant is beyond attack even on proof that the allegations on which it is based were perjured.”
The motion is in all respects granted and the warrant controverted.