Joel J. Tyler, J.
We are presented with a unique proposition. We are asked, in effect, to apply the term "perjurious”, as used and intended in People v Alfinito (16 NY2d 181, 186), in a case, as here, where no legal perjury has been found in the allegations to secure a search warrant. Is Alñnito limited only to cases where legal perjury is established? I believe not, if the intent of Alfinito is to be given logical effect.
Defendants move to controvert a no-knock search warrant and to suppress the contraband seized in pursuance thereof (CPL 710.20). The supporting affidavit for the warrant stated, on information and belief, that an undercover officer purchased narcotics from defendants in their second-floor apartment on April 5 and 9, 1976. The defendants claim such statement, among others, is false and justify their request for a hearing by prima facie documentary proof, namely, that undercover officer’s "Buy Report”, which states that the April 5 purchase was effected, not in defendants’ second-floor apartment, but elsewhere.
Accordingly, it having been initially shown, as required, that there was a factual implication of perjury and falsehood in the allegations upon which the warrant was based, a hearing was ordered and held (CPL 710.60; People v Alfinito, 16 NY2d 181, supra; People v Solimine, 18 NY2d 477, 480; People v Glen, 30 NY2d 252, 262; United States v Dunnings, 425 F2d 836, 840).
The warrant, its supporting affidavit and minutes of testimony before the issuing Justice were placed in evidence at this suppression hearing. That supporting affidavit, sworn to by Officer Harold Guy, stated in part, that information supplied to him by an undercover officer indicated that the aforesaid two purchases were made from the defendants in their second-floor apartment. Further, Officer Guy averred, that his personal but unspecified "investigations and observations” caused him to believe that defendants occupied that apartment and were there in possession of and trafficking in heroin.
The minutes of the sworn examination before the issuing Justice reveal that Officer Guy did not testify, except to identify himself and the undercover officer then present, as his informant. Thereupon, the undercover officer testified that he had purchased drugs from the defendants on April 5 and 9, 1976 "at the door of the [i.e., second-floor] apartment” but "I wasn’t in the apartment”. This was in contradiction of Officer *837 Guy’s affidavit, which indicated the purchases were made within the apartment. The informant later changed the place of purchase to the entrance door situated on the first floor within a small vestibule into which one enters the building. He further testified that after pushing the only bell in that vestibule, he saw the female defendant exit the second-floor apartment and walk down the stairs to that first-floor entrance door, where she greeted the officer and concluded the transactions; that he could and did see the apartment door on the second floor while looking through the glass partition of the entrance door on the first floor; that he understood the female defendant "occupies the second and third floors”, (without stating the basis for such belief) and "You may have to go through that same door (i.e. on second floor) that she comes out of to get to the third floor”.[1]
The warrant recites that it was issued upon proof offered by affidavit and oral testimony, which established probable cause to believe that the crimes were being committed within the second-floor apartment, where the search was ordered to be made.
It would appear that the issuing Judge could not and did not place reliance or give credence to that portion of Officer Guy’s affidavit which placed the drug purchases within the second-floor apartment. That becomes evident when we examine the testimony of the undercover officer who fixed the place of purchase elsewhere. Furthermore, the court understood that the affiant officer’s statement in this connection was based, not on personal observations, but rather upon information from the undercover officer, who was in the best position to directly advise that court where the purchases were made. The latter did so, thus correcting an apparently misleading affidavit. It is common experience that information passed from one to another often assumes proportions different, misleading and at times even ominous when compared with the initial statements. This may have been the result in the retelling by Officer Guy (by affidavit) what his informant originally told him.
However, it is clear that the issuing court made its determi *838 nation of probable cause and justified the search of that second-floor apartment particularly on the testimony of the undercover officer, who assured the court, by citing his alleged personal observations, that he saw the female defendant exit a second-floor apartment and thereafter enter it on the occasion of each of the two purchases. The Judge, therefore, reasonably inferred that she occupied that apartment, justifying the warrant.
Both officers testified at the instant hearing. Officer Guy testified that his informant never told him that the purchases were made within the second-floor apartment, in spite of his affidavit to the contrary. Bewildering was his further statement, that he made no personal investigations or observations to support his belief that drug trafficking was being conducted on the second floor, although his affidavit indicated that he did. Credulity was stretched even further, by his testimony that he read and signed his affidavit after he heard the contradicting testimony of his informant before the issuing Judge. In spite of all, he nevertheless, maintained that he believed that the affidavit was correct when he signed it.
The testimony of the undercover officer, the informant, was as bewildering as that of Officer Guy. He also testified here that he never told Officer Guy that the drugs were purchased within the subject apartment; further, that he never entered the building proper but dealt with defendants at the entrance door to the building, located in the small vestibule on the ground or first floor, and from that position he could not see, he said, any door on the landing of the second floor; that he never saw either defendant enter or exit through a door on the second floor; that when the defendants reached the second-floor landing he saw the female defendant extend her arm with hand opened, and then "disappear”, and that he thereupon "assumed” she was pushing open a door and "go into what appeared to be an apartment,” but that there was a third floor and that defendants may possibly have proceeded to that floor after they disappeared from the second-floor landing. All of this was in contradiction of his testimony before the issuing Judge.
It is plain that neither Officer Guy nor his informant had a reasonably objective basis to believe, when they applied for the warrant, that the defendants, or either of them, occupied a second-floor apartment rather than a third-floor apartment. It is also clear that issuance of the warrant would have been *839 highly problematical were the examining Judge aware of the true facts and circumstances concerning the observations the informant did, in fact, make. The actual observations were critical and speak to the very essence of materiality; the failure to reveal them in full was a denial of probable cause (People v Alfinito, 16 NY2d 181, supra; People v Callahan, 85 Misc 2d 1083; United States v Pond, 523 F2d 210, 213; CPL 690.45, subd 4).
CPL 690.40 authorizes the issuing Judge to examine any person with pertinent information in aid of determining probable cause for the warrant. Where the People choose to rely, not only upon an officer’s supporting affidavit, but upon personal testimony of an informant, be he another police officer or a civilian, then both the affidavit and such testimony constitute the whole of the "application of a police officer” for the warrant before the Magistrate (CPL 690.05).[2] Material misstatements in the one will be imputed to and affect the other, and may brush the entire warrant application with the color of illegality (People v Callahan, 85 Misc 2d 1083, supra, pp 1086-1088).
Alñnito (supra), and its progeny would void warrants where the statements supporting the application therefore were found to be "perjurious”. I do not find perjury here, that is, an intent to deceive or mislead (Penal Law § 210.00 et seq.), but rather I find material misstatements of facts, given recklessly and negligently, with a marked neglect for or indifference to accuracy and careful procedure. Essentially, such resignation to acute carelessness resulted from a combination of baseless assumptions by the undercover officer and the inexcusable failure of Officer Guy to carefully examine his affidavit before signing it. I hold further that such misstatements clearly affected the finding of probable cause.
The following observations give the basis, in the main, for my foregoing conclusions:
I am persuaded that when the undercover officer saw the female defendant stretch out her arm with her hand opened, and disappear on the second floor, he "assumed”, as he stated, that she was entering an apartment, there, although he saw no door. Yet, it was possible, as he stated, that she may have proceeded through a "doorway” to the third floor, which he *840 believed she also occupied, without giving the basis for such belief. Mere affirmance of belief or suspicion is hardly sufficient to support a warrant (Nathanson v United States, 290 US 41, 47). And so we see here epitomized a common lay tendency to culture assumption into reality without substantial basis for the assumptions themselves. Such a tendency may be understood and perhaps excused in the untrained, but becomes intolerable and dangerous when present in an experienced police officer. But that does not spell out perjury.
As to Officer Guy, it is inconceivable that he would have signed his affidavit were he fully familiar with all of its contents. That affidavit states that the undercover officer advised Guy that he purchased the narcotics on two occasions in defendants’ second-floor apartment. Guy testified here that he read and signed it after he heard the testimony of that officer before the issuing Judge. But yet, only minutes before he signed the affidavit, Guy heard the informant tell the Judge that he was never present nor purchased the narcotics within that apartment, but rather at the door on the first floor leading into the building. Further, Officer Guy knew, before he and his informant appeared before the Judge, that at least one such purchase was made on the first or street floor since the "Buy Report” so indicates and Officer Guy here testified that he examined it some time before the affidavit was prepared. Further, the minutes of the testimony before the issuing Judge clearly indicate that immediately following the informant’s testimony, the Assistant District Attorney asked the Judge to direct Officer Guy to "sign his name to his affidavit having been previously sworn” and "whereupon the Detective Guy proceeds to sign some papers; after which, the Judge proceeds to sign them also.” There was no indication that Officer Guy read the affidavit, or was asked to do so before signing it, and, in fact, I find he did not. I find he was handed a piece of paper by the prosecutor, was asked to sign it before a Judge and he did so. Impressed by the array of authority, he could not believe the affidavit was incorrect. Did not the prosecutor prepare it? So assured, he believed it to be correct when he signed it, as he testified here. But this too does not spell out perjury.[3]
The critical inquiry here is whether or not the warrant may *841 be canceled if this reviewing court does not find the commission of technical perjury, but rather, as here, a reckless or negligent disregard for and indifference to accuracy and careful procedure, materially affecting the ascertainment of probable cause.[4] Our State appellate courts have not as yet addressed themselves to this question, but the Federal courts have. The latter would abrogate a warrant upon a showing of intentional false statements in the allegations presented to secure it (United States ex rel. De Rosa v La Vallee, 406 F2d 807, 808, cert den 396 US 854; United States v Sultan, 463 F2d 1066, 1070; United States v Carmichael, 489 F2d 983, 988; United States v Upshaw, 448 F2d 1218, cert den 405 US 934; United States v Belculfine, 508 F2d 58, 63; United States v Thomas, 489 F2d 664, 669). This is consistent with the position of our State courts under Alñnito.
However, the Federal courts go further. For example, our Second Circuit would vitiate a warrant, even absent a finding of a specific intent to deceive, if the misstatements are material to the finding of probable cause, are negligently made and result in misleading the issuing Judge. "A critical issue is materiality” in the determination of the warrant’s viability (United States v Gonzalez, 488 F2d 833, 838; United States v La Vecchia, 513 F2d 1210, 1218; United States v Bravo, 403 F Supp 297, 304).
In the Fifth Circuit, the courts would also suppress the warrant, if the misstatements were material to the establishment of probable cause, regardless of the intent to do so (United States v Thomas, 489 F2d 664 [CCA 5th, 1974], supra; cf. United States v Belculfine, 508 F2d 58 [CCA 1st], supra).
In the Seventh and Eighth Circuits the warrants will be voided if the affidavit is recklessly or intentionally untruthful, regardless of materiality, while completely innocent or negligent misrepresentations, even of material facts, are not deterrable. Further, a reckless misrepresentation of a material fact warrants suppression (United States v Carmichael, 489 F2d 983 [CCA 7th], supra; United States v Marihart, 492 F2d 897, 900 [CCA 8th]).[5]
*842 It is now axiomatic that where material misinformation from an informant is included within the officer’s affidavit, that affidavit is, nevertheless, beyond attack, since "A challenge directed at the veracity of the informer does not put into issue the truthfulness of the affiant’s statements.” (People v Solimine, 18 NY2d 477, 480, supra; People v Porter, 44 AD2d 251, 252). But, Alfinito teaches us that where the affiant’s misstatements are directly due to his own misfeasance, grounded in perjury, the warrant does not deserve our usual protection and must fall. However, I would now go further and adopt additionally, certain of the Federal guidelines and hold that where unintentional misstatements are made by way of affidavit or personal testimony, which materially affect the ascertainment of probable cause, and they are the result of a reckless or negligent disregard of or indifference to official duty to exercise due care and exactitude, the warrant should similarly be nullified, since, as in the case of perjury, the basic effect of such dereliction is to mislead the Judge in his determination of probable cause and subsequent issuance of the warrant.
The right sense of justice and logic dictates that the abrogation of a search warrant should not be limited only upon a finding of perjury, that is, intentional deception, for our purpose in extending the sanction is clear — to compel official respect for the Fourth Amendment guarantee by removing a possible loophole or incentive to disregard it (Elkins v United States, 364 US 206, 217).
Further, the more encompassing approach we adopt here would appear as a natural development of and sequence to Alfinito, and distinctly within its meaning. Alfinito observed (p 185), that it would be incongruous with Mapp v Ohio (367 US 643), to suggest that "a search warrant is beyond attack even on proof that the allegations on which it was based were perjured”. Now, we would add, by a natural progression, that a warrant should not be beyond attack where proof that the material allegations upon which it was based were recklessly or negligently misstated by the police officials, albeit unintentionally. Under such circumstances, a normal assumption follows — the issuing Judge is misdirected. We should not view Alñnito as requiring a doctrinaire or technical application, *843 lest, in doing so, we void the salutary restraints it seeks to enforce (cf. People v Irizarry, 64 Misc 2d 49).
The defendants have proved "by a preponderance of the evidence”, the falsity of the material allegations upon which the warrant was justified. Accordingly, the warrant is contraverted, and the contraband seized, as a result of its execution, is suppressed (People v Irizarry, 64 Misc 2d 49, supra, p 53; People v Harrington, 70 Misc 2d 303, 305).

. Should not this response have raised the question: "How do you know, with any degree of certitude, that the illegal activity was being conducted on the second rather than the third floor, or perhaps both?” The building apparently had three floors, namely, a street or first floor and two upper floors.

. In considering the validity of the warrant, the reviewing court must consider all of the information brought to the Magistrate’s attention. ( Aquilar v Texas, 378 US 108, 109, n 1; Giordenello v United States, 357 US 480, 486.)

. We need not assume in this or in any hearing that the officers committed perjury, when there are other reasonable explanations for their conduct (cf. McCray v Illinois, 386 US 300, 313).

. The terms recklessness and negligence embody clearly different concepts of culpability (Penal Law, § 15.05) and differ again from perjury, which involves the element of intent (Penal Law, § 210.00 et seq.).

. See Kipperman, "Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence” (84 Harv L Rev 825), which suggests that proper application of Fourth Amendment values requires setting aside the warrant if based on purposeful
*842 misstatement, regardless of materiality of the statements, also setting it aside if the misstatement is both negligent and material.