THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOHN BRADLEY, Respondent.

First Department, July 16, 1992

**APPEARANCES OF COUNSEL**

*S. Charles Helman* of counsel *(Norman Barclay* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*Vincent D. Scala* for respondent.

**OPINION OF THE COURT**

Asch, J.

The facts in this case are stated with specificity in the dissent. The police were advised by an informant in custody that the defendant had weapons in his apartment, which the informant had seen. Instead of having an interrogating officer simply file an affidavit containing the hearsay allegations of the informant, before the Criminal Court, to obtain the issuance of a search warrant pursuant to CPL 690.35, the police officer submitted an affidavit and testified and also had the informant submit an affidavit and testify, at the ex parte hearing. This procedure insured that the veracity of the informant could be assessed by the Magistrate, in determining whether probable cause existed for the issuance of a search warrant *(see, People v Taylor,* 73 NY2d 683, 688).

In accordance with the mandate of CPL 690.40 (2), the Magistrate made inquiry of the officer and the informant and was "satisfied that there [was] reasonable cause to believe" that there were firearms within defendant's apartment. The Magistrate's conclusion that the informant was truthful and reliable and that he had seen the contraband in the apartment was reasonable at the time, being based on the testimony before her.

The search revealed that there *were* guns and narcotics in the apartment. Subsequently, the People discovered, and promptly notified the defendant and court, that the informant had lied about being in the apartment and personally observing the firearms. After a *Franks* hearing *(see, Franks v Delaware,* 438 US 154), the IAS court granted the defendant's motion to controvert the search warrant and suppressed the guns and narcotics seized pursuant to the warrant. There was no finding by the court that the officer had made false statements or statements in reckless disregard of the truth. However, it found that the false statements made by the informant were made not to the police officer and presented to the Magistrate as hearsay in the officer's affidavit, but made in direct sworn testimony before the warrant court. The IAS court concluded, therefore, that "where it is established, as it has been here, that the informant's testimony under oath was perjured, the proper action is to controvert the warrant". We disagree with that conclusion and therefore reverse.

In *Franks v Delaware (supra)*, the United States Supreme Court reversed a Delaware holding that the defendant under *no* circumstances could challenge the veracity of a sworn statement used by the police to obtain a warrant. The *Franks* Court found the Delaware no-challenge rule was inimical to the spirit and purpose of the Fourth Amendment. It held that if, after a hearing, the defendant established by a preponderance of the evidence that the false statement was included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause, then the search warrant must be voided and treated as if probable cause was lacking on the face of the affidavit *(supra,* at 155-156).

This finding by our highest Federal court simply reiterated the long-standing rule in New York that a defendant may challenge the truthfulness of the allegations in an affidavit supporting a search warrant, but *only* where the veracity of the police officer affiant is in issue, and *not* the truthfulness of the information given by the informant. The Court of Appeals, three years before *Franks,* reaffirmed this rule by noting: "As we held in *People v Solimine* (18 NY2d 477), a defendant is entitled to a hearing in which he may challenge the truthfulness of the allegations in the affidavit supporting a search warrant only where he attacks the veracity of the *police officer affiant,* and not where, as here, the credibility of the source of information is challenged *(People v Solimine,* 18 NY2d 477, 499, *supra)." (People v Slaughter,* 37 NY2d 596, 600 [emphasis added].) The United States Supreme Court adopted this limitation when it expressly held in *Franks:* "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *(Franks v Delaware, supra,* at 171.)

The IAS court found, as noted, that the informant's false information was dispositive in the case before us *only* because he actually testified, rather than transmitted his information indirectly to the Magistrate via the police officer's affidavit *(but see, People v Friss,* 65 AD2d 907 [3d Dept] [no hearing required where a defendant alleged an informant testified falsely before a warrant court]).

In any event, this approach misapprehended the primary function of the exclusionary rule, namely, to deter *official* misconduct. "The primary justification for the exclusionary rule then is the deterrence of police conduct that violates

Fourth Amendment rights * * * [T]he rule is not a personal constitutional right. It is not calculated to redress the injury to the privacy of the victim of the search or seizure, for any '[r]eparation comes too late.' *Linkletter* v. *Walker,* 381 U.S. 618, 637 (1965)." *(Stone v Powell,* 428 US 465, 486.) Deterrence of perjury by citizen informants will certainly not be effected by suppressing evidence. Such deterrence might better be achieved by prosecution of informants for such perjury.

A leading commentator has written on the facts before us where the informant is an affiant and testifies before the warrant court and "he, unknown to the officer who produced him or the magistrate, makes a deliberately false statement or one with reckless disregard for the truth. Though the falsity would be by the affiant, so as to come within * * * the holding in *Franks,* it can be cogently argued that such falsity should not be a basis for striking down a facially-sufficient affidavit. There has been no government wrongdoing in such a case, and thus it would seem that 'the rule that whenever an affiant has reasonable grounds to believe an informer, the warrant stands even if the informer is lying, * * * applies to save the warrant when the affiant is a private individual and the co-operating police and magistrate have reasonable grounds to believe him' [quoting Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence,* 84 Harvard L Rev 825, at 831, n 47]. This approach would not make it disadvantageous to the police to produce their informants before magistrates." (2 LaFave, Search and Seizure § 4.4 [b], at 193 [2d ed].)

In each of the nisi prius cases cited by the dissent in support of its position *(People v Callahan,* 85 Misc 2d 1083; *People v Jacobson,* 101 Misc 2d 1069), there was alleged misconduct by the police officer affiant. Here, there was no evidence of misconduct or complicity by the police officer affiant or any other government official. Accordingly, the IAS court improperly controverted the search warrant and suppressed the evidence.

Accordingly, the order of the Supreme Court, New York County (Robert Haft, J.), entered September 26, 1990, which granted defendant's motion to controvert a search warrant and suppressed evidence which had been seized pursuant to that warrant, should be reversed on the law, and the motion denied.

CARRO, J. P. (dissenting). This appeal presents the question

whether a defendant can controvert a search warrant on the ground that it was based solely upon perjurious information related by an apparently credible citizen-informant directly to the Judge who issued the warrant.

On May 5, 1989, Detective Donald Whelan received a telephone call from an Assistant District Attorney in New York County requesting that he interview a person in police custody who was offering to provide the police with information regarding a cache of guns and ammunition in the premises occupied by the defendant, his mother and his sister. Detective Whelan knew that the defendant was suspected by the police as being involved with drugs, guns, some shootings and "a possibility of a homicide", in the area surrounding 140th Street and 8th Avenue in Manhattan.

Detective Whelan and his partner showed the informant between 10 and 20 photographs of people who had been arrested in the area of 140th Street and 8th Avenue, and the informant was able to identify most of them, including the defendant. The informant told Detective Whelan that several days before the interview, he had seen four or five, nine millimeter semi-automatic pistols, known on the street as "Tec's", as well as other weapons of different calibers, and ammunition, in the defendant's locked and guarded bedroom in apartment 3-D at 115 West 142nd Street. A check with Consolidated Edison revealed that defendant's mother, Henrietta Bradley, lived at the described address.

Armed with this information, Detective Whelan applied to Judge Barbara Newman of New York City Criminal Court for a warrant to search the apartment. Affidavits setting forth the information related by the informant to the detectives were sworn to by Detective Whelan and the informant, both of whom appeared in person and were examined under oath by Judge Newman. Several changes were made in the informant's and Detective Whelan's affidavits concerning the date when the informant allegedly saw the guns in the defendant's bedroom, and whether the guns were used in illegal drug transactions.

The defendant argues that these changes should have alerted Judge Newman that the informant was not telling the truth when he testified under oath that he had seen the weapons in the defendant's bedroom. However, I agree with the majority that the information presented to Judge Newman was sufficient, if true, to establish probable cause for

issuance of the warrant, and that there was no apparent basis at that time to suspect that the informant was not telling the truth *(see, People v Cantre,* 95 AD2d 522, 526, *affd on opn below* 65 NY2d 790). Although Detective Whelan might have probed more deeply into the informant's claim that he had been in the defendant's bedroom, any lack of caution in that regard becomes evident only in the clear light of hindsight, and I accordingly agree with the majority that Detective Whelan did not recklessly include, in his own affidavit, the false information imparted to him by the defendant.

Although the information about the guns in the defendant's bedroom turned out to be accurate, the People conceded prior to the *Franks* hearing *(see, Franks v Delaware,* 438 US 154) held on defendant's motion to suppress the items seized, that the informant lied in his affidavit and sworn testimony when he stated that he had personally seen the guns there. In fact, the informant was merely relating what he had heard about defendant's arsenal from others on the street. Thus the question squarely presented is whether this perjury vitiated the warrant application process, and the warrant itself, so as to require suppression of the fruits of that warrant. I would hold that it does, as did the hearing court.

Our State and Federal Constitutions provide in identical language that "no warrants shall issue, but upon probable cause, supported by oath or affirmation" (NY Const, art I, § 12; US Const 4th Amend). In New York, a search warrant may be issued only upon application of "a police officer, a district attorney or other public servant acting in the course of his official duties" (CPL 690.05 [1]; 690.35 [1]). In the vast majority of search warrant applications, the "affiant" is a police officer, as contrasted to a citizen-informant. On occasion, as in the instant case, the informant may also be examined under oath (CPL 690.40 [1]), in which case the informant also becomes an affiant.

The law is settled in New York that "a defendant is entitled to a hearing in which he may challenge the truthfulness of the allegations in the affidavit supporting a search warrant only where he attacks the veracity of the police officer affiant, and not where * * * the credibility of the source of information is challenged" *(People v Slaughter,* 37 NY2d 596, 600 [1975]). This principle was later confirmed as a matter of Federal constitutional law in *Franks v Delaware* (438 US 154 [1978], *supra).* Thus, the central question presented in this appeal is whether the Court of Appeals and the Supreme

Court intended that a defendant be permitted to attack the veracity of the affiant only when the affiant is a public servant (as contended by the People), or whether a defendant may challenge the veracity of an affiant who testified before the issuing Judge in support of the warrant even where the affiant is *not* a public servant (as contended by the defendant). The arguments raised by the People in favor of their position resemble those considered and rejected by the Supreme Court in *Franks v Delaware (supra,* 438 US, at 165-171; *see generally,* Annotation, *Disputation of truth of matters stated in affidavit in support of search warrant—modern cases,* 24 ALR4th 1266, § 3). After consideration of these factors, and the reasoning in the scant case law addressing the issue now before us, it is my view that the defendant's position is the correct one.

Two reported decisions in New York have considered the issue in depth, and both have concluded that a search warrant may be controverted on the ground of false statements made by a citizen-informant in sworn testimony before the issuing Judge where that testimony has provided the basis for probable cause and issuance of the warrant *(People v Callahan,* 85 Misc 2d 1083 [Sup Ct, Bronx County 1976]; *People v Jacobson,* 101 Misc 2d 1069 [Sup Ct, Bronx County 1979]).* I agree with the analysis and conclusions reached in those cases, but I also recognize the seeming paradox implicit in their holdings. As articulated by the late Justice William Kapelman in *People v Jacobson (supra,* 101 Misc 2d, at 1074):

"In the case at bar * * * probable cause was not based solely on the sworn statements of a public servant, but was established on the cumulative sworn statements of the detective and two private citizen informants. All of these statements under oath contributed to a finding of probable cause and directly resulted in the issuance of the search warrant. Thus, the constitutionally grounded principles permitting an attack on the truthfulness of the sworn statements supporting the application for a search warrant must apply to all persons who gave such statements. Where the People have chosen to present sworn allegations to the issuing Justice by informants in addition to those by the public servant applying for a search warrant, the application for a search warrant consists of the sworn allegations of all such persons. Collectively, all

* The Appellate Division, Third Department, reached a contrary conclusion in a brief memorandum *(People v Friss,* 65 AD2d 907 [1978]). I respectfully disagree with that decision.

such persons constitute the 'affiant' whose veracity is subject to attack.

"It is ironic, indeed, that because the private citizen informants appeared before the issuing Justice and gave their source information under oath in a proceeding exceeding the requirements of the Fourth Amendment, their veracity is now subject to attack. Had the issuing Justice received their information merely as hearsay from a sole public servant affiant, which is all the Constitution requires, their veracity would be unchallengeable. Nevertheless, since their participation under oath constitutes an integral part of the application and was essential to a finding of probable cause, their veracity may be attacked on a proper showing."

Confirmation of this view that a defendant may controvert a warrant based upon false statements of a citizen affiant who has given testimony forming the basis of the Magistrate's finding of probable cause, is found in the following language in *Franks v Delaware (supra,* 438 US, at 164-165): " '[W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a *truthful* showing' [quoting *United States v Halsey,* 257 F Supp 1002, 1005 (SD NY 1966), *affd* 2d Cir, June 12, 1967 (unreported)]. This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true. * * * Because it is the magistrate who must determine independently whether there is probable cause * * * it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment."

Addressing briefly the points and legal analysis contained in Justice Asch's opinion for the Court, I first note that he emphasizes the words "police officer affiant" contained in the rule enunciated in *People v Slaughter (supra,* 37 NY2d, at 600), as if to suggest that the Court of Appeals held therein that a defendant may challenge the veracity of the affiant *only* where the affiant is a police officer or other public servant. In fact, *Slaughter* does not stand for that principle; the Court rather referred to the affiant as a "police officer

affiant" because the "affiant" in that case, and in *People v Alfinito* (16 NY2d 181) and *People v Solimine* (18 NY2d 477), which precedents the Court relied upon in stating the rule, happened to be police officers. Had the Court of Appeals intended to set forth the rule adopted today by the majority, appropriate language could easily have been utilized to unambiguously express that view. I note that the Court of Appeals summarized its holding in *Slaughter* thus: *"Alfinito* is only available to a defendant who claims that the affiant has perjured himself." *(Supra,* 37 NY2d, at 600.) Significantly, this statement of the rule draws no distinction between governmental and nongovernmental affiants.

It is true, as pointed out by the majority, that in *People v Callahan* (85 Misc 2d 1083, *supra)* and *People v Jacobson* (101 Misc 2d 1069, *supra),* there was alleged misconduct by the police officer affiants in addition to the perjured testimony by the nongovernmental affiants. However, it is clear that the Justices who decided those cases did not include the alleged official misconduct among the *material* facts in their holdings. Accordingly those cases are not distinguishable in respect of their material facts, and their analysis and holdings support the defendant's position herein *(see,* Goodhart, *Determining the Ratio Decidendi of a Case,* from Essays in Jurisprudence and the Common Law, at 1-26 [1931], reprinted in Vanderbilt, Studying Law, at 493-525 [1955]).

In *People v Born* (113 Ill App 3d 449, 447 NE2d 426 [2d Dist 1983]), the defendant sought to controvert a search warrant on the ground that a nongovernmental affiant had made false statements in his supporting affidavit. The trial court refused to grant the defendant a *Franks* hearing on the ground that *Franks v Delaware (supra)* did not mandate a hearing where the affiant is a nongovernmental official. The appellate court's analysis of *Franks v Delaware (supra)* is pertinent and instructive *(People v Born,* 113 Ill App 3d, at 453-455, 447 NE2d, at 428-429, *supra):*

"The language of the *Franks* opinion itself does not appear to make any distinction between governmental and nongovernmental affiants. The court announced its rule as follows:

" '[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the

Fourth Amendment requires that a hearing be held at the defendant's request.' *Franks v Delaware* (1978), 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672.

"The court further stated that '[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.' 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667, 682.

"The quoted passages refer to 'the affiant' without any classification of affiants according to whose sworn statements may or may not be challenged. At no point does the court require a showing that the challenged affiant be a governmental employee. The second quoted sentence denies extension of *Franks* to challenges of statements of *unsworn* nongovernmental informants. As an affiant, the John H. Doe in the present case does not appear to be excluded from the rule of *Franks* whether or not he is nongovernmental.

"Since *Franks,* the Supreme Court has not directly addressed the issue of whether that decision was intended to apply where the affiant is not a governmental employee. However, in *Hall v. Illinois* (1978), 438 U.S. 912, 98 S.Ct. 3138, 57 L.Ed.2d 1157, the court summarily vacated the judgment of the Illinois Appellate Court in *People v. Hall* (1977), 45 Ill.App.3d 469, 4 Ill.Dec. 239, 359 N.E.2d 1191, and remanded for further consideration in light of *Franks.* Unlike *Franks,* where the challenged affiants were police officers, but like the present case, the challenged affiant in *Hall* was an anonymous 'John Doe.' Although not conclusive, the action of the Supreme Court in vacating and remanding *Hall* indicates its willingness to apply the *Franks* rule to challenges to anonymous affiants * * *

"The State argues that *Franks* should be construed as applicable only to governmental affiants because the exclusionary rule exists primarily to deter misconduct by the State, not misconduct by private parties. *(See Franks v Delaware* (1978), 438 U.S. 154, 165-66, 98 S.Ct. 2674, 2681-82, 57 L.Ed.2d 667, 678-79.)* It also argues that permitting post-search challenges to private affiants disserves public policy by discouraging the police from placing their private citizen informants on the stand. Although these arguments might be persuasive if this court were initially devising the proper rule for permitting post-search challenges to warrant affidavits, they do not permit us to create an exception to *Franks* applicability which

the language of the *Franks* opinion does not appear to permit. *(See* 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 4.4, at 64-65 (1978), wherein it is argued that falsity by a private person affiant *should* not be subject to post-warrant challenges while it is conceded that challenges to private person affiants come within the holding of *Franks).* The court in *Franks* noted that the rule it announced 'has a limited scope' (438 U.S. 154, 167, 98 S.Ct. 2674, 2682, 57 L.Ed.2d 667, 679), and specified in detail the requirements a defendant must meet to mandate an evidentiary hearing. Under such circumstances, this court will not hold that when the Supreme Court said 'affiant' it did not mean every affiant. Rather, we hold that the trial court's conclusion that *Franks* did not encompass challenges to nongovernmental affiants was error."

I would accordingly affirm the order of the Supreme Court, New York County (Robert Haft, J.), entered September 26, 1990, which granted the defendant's motion to controvert the subject search warrant, and suppressed the evidence that had been seized pursuant to that warrant.

MILONAS, KUPFERMAN and SMITH, JJ., concur with ASCH, J.; CARRO, J. P., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on September 26, 1990, reversed, on the law, and defendant's motion to controvert a search warrant and suppress evidence seized pursuant to the warrant is denied.