Gabrielli, J.
The defendant stands convicted, following a jury trial, of the crimes of criminal possession of a dangerous drug in the fourth degree (Penal Law, § 220.15) and unlawful possession of an unregistered rifle (Administrative Code of City of New York, § 436-6.14), and the convictions have been affirmed by an unanimous court (44 AD2d 911). On this appeal by leave of a Judge of this court, he raises two issues. We are asked (1) to determine whether there was probable cause to issue the search warrant which resulted in the seizure of contraband in Slaughter’s hotel, and (2) whether the Trial Judge erred in denying defendant’s motion for a new trial based on "newly discovered evidence.” (CPL 330.30, subd 3.)
The search warrant was issued on the affidavit of police officer Carmel Vasta stating that he received information from a confidential and reliable informant that the defendant possessed narcotics and was selling them at certain specified rooms "on the left side of the main lobby of the Ebony Hotel”. The affidavit further alleged that the defendant was in possession of a gun at the same location and, further, that the officer’s informant had previously supplied information which led to pending arrests and the seizure of narcotics. Officer Vasta also affirmed that he himself had observed known narcotics sellers enter the lobby of the hotel and proceed to the rooms described by the informant.
On a motion to suppress the contraband seized pursuant to the search warrant (CPL 710.20, subd [a]), the defendant presented testimonial and documentary evidence, the latter in the form bf hotel receipts, that he was traveling to West Virginia on the dates during which the informant claimed to have witnessed narcotics sales in the hotel. Following an in camera examination of the informant, the Judge denied the motion to suppress.
After the jury returned a guilty verdict, defendant moved *599 for a new trial, pursuant to CPL 330.30 (subd 3), the motion being predicated on the allegation that two uniformed police officers, McShane and Lyons, who did not testify at trial and whose identity was unknown to defendant at that time, but who participated in the raid on defendant’s premises, had observed him in the hotel lobby during the course of the raid. This testimony purportedly contradicted the testimony of the plain-clothes officers, Feeley and Bruno, that the defendant was in the room containing the contraband when he was arrested. Slaughter claimed that the testimony of McShane and Lyons supported his contention at trial that he was arrested by the police in the lobby of the hotel and then taken to the room containing the contraband. The motion for a new trial was denied by the Trial Judge.
In People v Hanlon (36 NY2d 549) we restated the standards for the issuance of a search warrant on the hearsay statements of an informant, first articulated by the United States Supreme Court in Aguilar v Texas (378 US 108). The test focuses on both the informant and the information provided. In order to establish the veracity of the informant, the affiant must set forth the reasons which lead him to believe the informant is credible. Secondly, the affiant must demonstrate the reliability of the information by delineating some of the underlying circumstances which form the basis for crediting the particular hearsay statement of the informant. (See United States v Ventresca, 380 US 102, 108; Jones v United States, 362 US 257.) This two-fold test enables an informed and neutral Magistrate to determine for himself the credibility of the informant and the reliability of the information provided.
The facts here are not dissimilar to those in Hanlon (supra), where the informant, a known narcotics user, had supplied information leading to pending arrests and the police officer affiant verified the information provided by observation of known narcotics users entering the premises described by the informant. (People v Hanlon, 36 NY2d 549, 554, supra.) Here, information previously supplied by the informant led not only to arrests but to the actual seizure of narcotics. In addition, as in Hanlon, the police officer observed known narcotics sellers entering Slaughter’s hotel. (See, also, People v Cerrato, 24 *600 NY2d 1, cert den 397 US 940.) These independent observations provided a "substantial basis” for believing the informant (Jones v United States, 362 US 257, 269; United States v Harris, 403 US 573, 580-581).
The defendant claims, however, that the inaccuracy of the dates on which the informant claims to have witnessed him sell narcotics renders the informant unreliable. We do not find that the claimed inaccuracy of the dates is fatal to the credibility of the informant or impeaches the substance of the information provided. Faced with the inconsistency between the hearsay statement of the informant and the documentary evidence introduced at the hearing on the motion to suppress, the Judge interviewed the informant in camera. He found that the informant was reliable, that the informant did in fact provide the information alleged in the affidavit and that Officer Vasta relied in good faith upon that information. We find no reason to disturb these conclusions.
Defendant’s reliance on People v Alfinito (16 NY2d 181) is misplaced. As we held in People v Solimine (18 NY2d 477), a defendant is entitled to a hearing in which he may challenge the truthfulness of the allegations in the affidavit supporting a search warrant only where he attacks the veracity of the police officer affiant, and not where, as here, the credibility of the source of information is challenged (People v Solimine, 18 NY2d 477, 499, supra). Alñnito is only available to a defendant who claims that the affiant has perjured himself. In light of the court’s affirmed findings outlined above, we must reject any claim that Officer Vasta’s affidavit was not truthful.
We turn now to defendant’s claim that he is entitled to a new trial on the grounds of "newly discovered evidence.” (CPL 330.30, subd 3.) We find his contention without merit. Viewed in the light most favorable to him, the testimony of Officers McShane and Lyons at best presents merely an inconsistent version of the circumstances surrounding the initial entry of the police into Slaughter’s hotel. Their testimony does not bolster his contention at trial that the police arrested him in the lobby of the hotel and then took him handcuffed to the room where the contraband was located. Both officers testified at the hearing on the motion for a new trial that they did not know the whereabouts of the defendant once the doors of the *601 hotel were opened and the police rushed in.*
The Trial Judge found that the testimony of McShane and Lyons did not impeach the testimony of Officer Bruno that he found defendant with the contraband behind the locked door in room No. 10 of the hotel. He concluded that the defendant did not" meet the statutory requirement that the new evidence must "create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant.” (CPL 330.3, subd 3.) In light of these findings and our own examination of the record, we conclude that the Trial Judge did not abuse his discretion in denying the motion for a new trial. (See Cohen and Karger, Powers of the New York Court of Appeals [rev ed], § 198, p 742.)
The order affirming the judgment of conviction should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

 Officer McShane testified as follows:
Q. Did Mr. Slaughter move in any way once you entered the lobby?
A. There was a lot of confusion. I don’t know where Mr. Slaughter went. The next time I saw Mr. Slaughter he had handcuffs on him.
Q. So you do not know of your own knowledge how Mr. Slaughter got from the lobby just before the door was opened to down the corridor several minutes later is that correct?
A. That’s correct.
Q. Can you tell us of your own knowledge whether he was taken from the lobby by other members of the Police Department?
A. I don’t know.
Similarly, Officer Lyons testified:
Q. Did you actually see how Roy Slaughter got from the lobby to that room?
A. No.
Q. So it is correct to say you don’t know of your own knowledge whether Roy Slaughter went down the hall before the police entered or was taken there by the other police?
A. That’s correct.