Jones, J.
In the circumstances disclosed in this record we hold that, incident[1] to the arrest of defendants in their apartment, it was lawful for the police to seize the bricks of marijuana found in a closed dresser drawer as well as the marijuana and drug paraphernalia which were, in plain view.
A named informer, apparently previously unknown to the police, but identified and still available, told officers with whom he was conversing that he knew where large quantities of marijuana could be purchased. When asked to do so the informer agreed to make a buy for the police. En route to the specified apartment, the informer further told the officers that *677 bricks of marijuana were kept in the bottom drawer of a dresser in the apartment and described the precise location of that dresser.
On arriving at the apartment house, the officers searched the informer and then supplied him with a marked $5 bill. The informer proceeded to defendants’ apartment, returning five to eight minutes later with three marijuana cigarettes. He told the officers that he bought only three cigarettes because the sellers began questioning him. At that he became nervous and when defendants left the room the informer left the apartment.
The police went to the apartment. When defendant Clements opened the door he was forthwith arrested and handcuffed. The arresting officers saw marijuana in a blue bowl, as the informer had told them they would, together with cigarette paper, a scale and various types of pipes, all in plain view. Defendant Metzger was located in a bathroom down the hall, arrested and handcuffed.
The officers then proceeded directly to a rear bedroom and to the dresser which had been described by the informer. On opening its bottom drawer they found 16 bricks of marijuana, again exactly as the informer had predicted, together with various bags of clear plastic containing marijuana. Examination of the top drawer of the same dresser revealed some 20 barbiturates with a few bags of marijuana and more cigarette paper. There was also a balance scale on top of the dresser.
When defendants’ motions to suppress were denied, each pleaded guilty. On appeal from the judgments of conviction the Appellate Division reversed, granting the motions to suppress as to the marijuana found in the dresser drawers. On the People’s appeal to our court we now reverse, concluding that the motions to suppress were properly denied in toto.
The issue before us is a relatively narrow one — was the seizure here of the marijuana in the closed drawers of the dresser illegal? . We conclude that such seizure was lawful in the circumstances confronted by these arresting officers.
At the threshold we note that there was reasonable cause to sustain the warrantless arrests in the circumstances of this case (CPL 140.10). This is essentially a determination of fact, which was made in favor of the People by the suppression court and affirmed at the Appellate Division (44 AD2d 572) and is beyond our review, unless such finding was erroneous *678 as a matter of law. (People v Alexander, 37 NY2d 202, 204; cf. People v Oden, 36 NY2d 382.) We find no such error of law. Surely in the circumstances described above the police officers had reasonable cause to believe that a crime had just been committed in the apartment, namely, the sale of marijuana cigarettes to the informer. (Cf. People v Montague, 19 NY2d 121, 125.)
The real issue on this appeal is whether defendants’ constitutional rights were infringed when, after the police had legally entered defendants’ apartment and had precise and highly reliable information that there was a cache of narcotics in the bottom drawer of a dresser in the rear bedroom, they proceeded without a search warrant to seize the contraband to protect against the risk of its destruction or removal. We hold that under an exigency exception to the normal constitutional proscriptions, defendants’ rights were not violated.[2]
The arresting officers had been told by the informer exactly where large quantities of marijuana were to be found. Developments prior to the seizure had fully substantiated both the credibility of the informer and the reliability of the information he supplied. (Cf. People v Montague, supra; United States v Wilcox, 357 F Supp 514, 518-519.) Thus there was probable cause for the search and consequent seizure (People v Slaughter, 37 NY2d 596; People v Hendricks, 25 NY2d 129, 133).
The conclusion that the police officers had probable cause for the search, however, does not end our inquiry. The critical issue is whether, assuming the existence of probable cause, it was lawful to conduct the search without first obtaining a warrant. Several years ago the issue was precisely framed in the United States Supreme Court:
"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any *679 assumption that evidence sufficient to support a magistrate’s disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people’s homes secure only in the discretion of police officers. * * *
"There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate’s warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction”. (Johnson v United States, 333 US 10, 13-15 [footnotes omitted and emphasis added].)
Crucial then to the legality of the warrantless seizure here is the coexistence of two factors, each significant for itself and more significant in combination. The first is the existence of what are referred to as exigent or exceptional circumstances. (Coolidge v New Hampshire, 403 US 443, 474-475.) The second is the fact that this seizure was specifically focused on a predetermined target, the predetermination of which was based on explicit information furnished by a known and still available individual whose reliability the police had currently substantiated (see People v Montague, supra). Most significant the seizure was conducted to prevent the threatened disappearance of tangible evidence.
We conclude that there is ample proof in this record to support the finding by the suppression court that there were exigent circumstances. In the first place in dealing with narcotics the officers were obviously dealing with potentially readily disposable contraband, even in the quantities ultimately discovered in this case. (Cf. United States v Davis, 461 F2d 1026, 1032.) Secondly, on returning with only three marijuana cigarettes the informer both by his conduct and by his verbal statements to the police revealed his own anxiety and belief, following their questioning of him, that the sellers might have become suspicious of what was afoot. Indeed the *680 informer appears to have been apprehensive for his own safety. Thirdly, but of less significance, the conduct of the officers reflected their own contemporaneous evaluation of the situation — that prompt police action was imperative. The apartment was entered without delay. Defendant Clements was arrested forthwith and promptly handcuffed. On locating defendant Metzger the officer immediately ordered him not to flush the toilet and promptly handcuffed him when he emerged. In sum the situation was sufficient to create, and evidently did create, a perceived likelihood that the marijuana of which the police had been informed might be destroyed.
As to the second factor, the informer, now confirmed as credible, had earlier located the particular dresser, had specifically identified the bottom drawer, and had described its contents. The selection of the target of the search was based on direct evidence; no resort was had to inference. Significantly, we think, in this case there was not a wide-ranging, exploratory, rummaging, or routine search of the character condemned in Chimel v California (395 US 752).
Our case should be viewed from the perspective of the police in the circumstances with which they were confronted. Having taken defendants into custody, the officers obviously had responsibility to take some action to prevent destruction or removal of the marijuana and drug paraphernalia. They would have been derelict in the performance of their duty as enforcement officers had they done nothing. Their right, indeed their obligation, to seize the contraband in plain sight is not questioned. The issue here relates to the bricks of marijuana in the bottom drawer of the dresser in the rear bedroom. The responsibility of the police was heightened by the fact that their knowledge of the existence of the contraband was grounded on particularized information rather than reasonable inference or general expectation.
Several alternatives were open. The police could have promptly seized the "evidence”, as they did. Or they could have posted a guard inside the apartment and gone immediately to obtain a search warrant. Or they could have set an. outside watch until a warrant could be obtained. To have taken no action on the scene pending application for a warrant would have been unacceptable.
It is suggested that rather than proceeding immediately to take possession of the concealed contraband, the police should have maintained a surveillance of defendants’ apartment for *681 such period of time as would have been required to obtain a search warrant. The adoption of any such proposal, we suggest, as a practical matter, would necessarily have exposed these defendants to a much more objectionable intrusion than did the seizure here.
While such an alternative might be verbalized as only a "surveillance”, on reflection one must be convinced that for the police merely to have manned an outside observation post would have been wholly inadequate to protect this contraband. As a practical matter the police would have had to take possession of defendants’ apartment, including surely all means of ingress and egress. Any person entering or leaving the apartment would have had to have been at least stopped and probably then restrained. Control of the areas adjoining the dresser would have had to have been assured. In sum this proposal would have entailed a much greater intrusion in both space and time than that to which defendants were actually subjected.[3]
Nor, more notably, would defendants in such event have had the protection of an interposed appraisal of probable cause for the more extensive intrusion by any neutral or detached Magistrate. Time and circumstance would no more have permitted postponement of police action to allow for presentation to a Magistrate for this purpose than for issuance of a search warrant.
Confronted, as we think the officers here were, with the necessity to take some police action without delay, we cannot conclude that the action they chose to take must be struck down as unlawful. Faced with alternatives, as to none of which could there have been any preliminary independent judicial scrutiny, we cannot think that a fair or sensible balancing of the competing private and public interests demands that the greater intrusion be preferred over the lesser. (Cf. People v Kreichman, 37 NY2d 693; People v Perel, 34 NY2d 462, 467; United States v Evans, 481 F2d 990.)
We hold that there was no infringement of the constitutional rights of these defendants. Other courts confronting similar factual situations have denied suppression. (E.g., United States v Pino, 431 F2d 1043, cert den 402 US 989; United States v Lozaw, 427 F2d 911; State v Wiley, 522 SW2d 281 [Mo].) They have not held themselves bound by the *682 unreasonably simplistic concept of "grabbable reach” attributed to Chimel (supra). (See People v Perel, supra, p 467.)
In Pino (supra),[4] through a bathroom window an agent observed defendants measuring and mixing two white powders. When one defendant emerged from the apartment, he was arrested and an envelope of heroin was found on his person. Agents then entered the apartment, arrested the other defendant, proceeded to a rear bedroom, and seized therefrom the powders which had earlier been seen through the window. In upholding the search and seizure, Chief Judge Lumbard noted (p 1045):
"Delay in searching the apartment in this case would not only have been dangerous for the officer left to guard the apartment, but also would have greatly increased the likelihood that the heroin would either be destroyed or even more likely eventually find its way on to the streets. Thus this was a situation where, in the language used by Mr. Justice Stewart in Chimel v California, * * * the inherent necessities of the situation at the time of arrest * * * required an immediate search of the entire apartment for the narcotics still there.
"* * * we think it clear that nothing in Chimel casts any doubt on the propriety of a search which is conducted under circumstances where an immediate and thorough search is imperative.”
In Lozaw (supra), agents had observed a man from whom they had arranged to purchase narcotics emerge from defendants’ apartment carrying a heavy suitcase. Agents immediately entered the apartment, arrested persons therein and seized narcotics found in the bathroom and living room. In concurring with the majority opinion sustaining the search and seizure, Chief Judge Lumbard noted (pp 917, 918):
"under all the circumstances which culminated in Lozaw’s arrest, it was the clear duty of the agents to make the arrest and seizure immediately, without a search warrant, and with the least possible delay.
* * *
"While it is true that the search conducted by the agents *683 went beyond 'the area from within which he might have obtained either a weapon or something that could have been used as evidence against him,’ Chimel, supra, at page 768, 89 S Ct at 2043, it is also true that the search of the apartment had to be made immediately if the remaining marijuana was to be found. The agents could not know how many others were involved in the distribution of the marijuana; it could have been many more than the five men they had seen * * * Any extended delay would increase the risk of danger to the officers from others who would soon be aware of what had happened and the risk that others would find some means of making away with the marijuana.”
We note that in both Pino and Lozaw the searches sustained were in scope far greater than that with which we are here confronted and were not predicated on the particularized and specifically directed information on which the police here operated.
The Supreme Court of Missouri in Wiley (522 SW2d 281, supra) recently confronted a factual circumstance almost identical to the one here under scrutiny. In Wiley an anonymous informer passed to the police a tip that in a certain apartment drugs could be found in a refrigerator and that the occupants of the apartment were preparing to dispose of such drugs. Having taken all reasonable steps to verify the information, the police proceeded to the apartment, gained entry, arrested defendants, and proceeded immediately to search the refrigerator where the drugs were found exactly as had been predicted by the informer. The court sustained the warrantless search notwithstanding its recognition that pursuant to Chimel the search went (p 290) "beyond the area of permissible search”. The court held (p 291):
"We do not believe Chimel and its progeny control the situation here. The thrust of Chimel was that the arrest of a person at home could not justify a routine search. Chimel did not involve a situation where the officers, having certain information, searched a particular area for particular evidence. In Chimel, there was no indication of circumstances which indicated to the officers that removal or destruction of the evidence was imminent or threatened. Nowhere in the opinion does the Court suggest that exceptional circumstances existed by which evidence was threatened to be removed or destroyed.
"In this case there was evidence that such circumstances *684 existed when the officers had to determine whether to proceed without warrant or wait until a warrant could be obtained. Under all the evidence we believe that the exceptional circumstances existed and therefore the search and seizure of the controlled substances was not an unreasonable one — the ultimate test under the Constitution as to whether the search and seizure was impermissible.”
The difficult problem of determining when the exigency of threatened removal or destruction of contraband will justify departure from the general requirement that arrests and searches and seizures proceed only on duly issued warrants has, of course, received extensive treatment by other courts in other factual contexts. The problem has only been exacerbated by the absence of any Supreme Court elucidation of the issue. The United States Court of Appeals, Third Circuit, in directly confronting the question recently noted that the "Supreme Court has never spoken in a case such as this one where the searching officers know there is in fact a large quantity of contraband narcotics in a dwelling, and they are apprehensive that it may be removed or destroyed” (United States v Rubin, 474 F2d 262, 268, cert den sub nom. Agran v United States, 414 US 833). The Rubin court concluded that where (p 268) "Government agents * * * have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified.” Recognizing that the emergency circumstances will vary from case to case, the court went on to list some of the circumstances which in the past have seemed relevant to the courts (pp 268-269): "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant, compare United States v Pino, 431 F2d 1043, 1045 (2d Cir 1970), with Niro v United States, 388 F2d 535 (1st Cir 1968); (2) reasonable belief that the contraband is about to be removed, United States v Davis, 461 F2d 1026, 1029-1030 (3d Cir 1972); Hailes v United States, 267 A2d 363 (DCCA 1970); (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, United States v Pino, 431 F2d at 1045; (4) information indicating the possessors of the contraband are aware that the police are on their trail, United States v Doyle, 456 F2d 1246 (5th Cir 1972); and (5) the ready destructibility of the contraband and the knowl *685 edge 'that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic,’ United States v Manning, 448 F2d 992, 998-999 (2d Cir 1971); United States v Davis, 461 F2d at 1031-1032.” We conclude that, in the totality of the circumstances presented by this case coupled with the fact the police here did not engage in a rummaging or general search but rather searched only the bedroom bureau which had been particularly described by the informer as where the contraband was located, the police here were justified in searching beyond the narrow reach defined by Chimel.[5]
Accordingly the order of the Appellate Division should be reversed. Because the disposition there was on the law, the case must now be remitted to that court for review of the facts (CPL 470.40, subd 2, par [b]).

. The adjective "consequential” might be more accurate in this instance. The seizure here followed the arrest which provided the predicate for the lawful entry of the police into defendants’ apartment. This seizure, however, does not fall within the category of prevention of injury to the arresting officer or of immediate destruction of evidence by the person arrested, normally associated with the phrase, "search incident to a lawful arrest”.

. In so holding, we do not, as is suggested in the dissenting opinion, retreat from our holding in People v Williams (37 NY2d 206). In that case we wrote (p 208), "The search was not conducted pursuant to a valid search warrant, or incidental to the completed arrest outside the searched premises, or with defendant’s consent”. More notably the search was not directed to a particular location previously described and known to conceal contraband but was rather a rummaging search for a television set.

. Cf. Mr. Justice White dissenting in Chimel v California (supra, p 775, n 5).

. The statement in the dissent that the search in Pino was pre-Chimel is chronologically accurate but without significance. The court wrote (p 1044): "Although this search was conducted nearly four years ago and is not governed by the standards set forth in Chimel * * * we believe that the search would have been proper even if it had occurred today.”

. We note that Coolidge v New Hampshire (403 US 443, supra), Vale v Louisiana (399 US 30),. United States v Jeffers (342 US 48), and Agnello v United States (269 US 20), cases relied on in the dissenting opinion, were all concerned with unlawful initial intrusions raising issues not here present where there can be no doubt that the entry into defendants’ apartment was lawful. (See, particularly, Coolidge, supra, pp 455-456; Vale, supra, pp 33-34; Agnello, supra, pp 30-31.)