## (February 3, 1983)

■ The People of the State of New York, Respondent, v Leon West, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered April 17, 1981, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the third degree. A search of defendant's residence at 160A Lark Drive in the City of Albany, made pursuant to a warrant, produced several packets of heroin along with hypodermic needles, glassine bags and other drug paraphernalia. Defendant was subsequently indicted and convicted of criminal possession of a controlled substance in the third degree; found to be a persistent felon, he was sentenced to a term of 20 years to life. We affirm. Initially he contends that the seized contraband, which he denied was even present before the police entered his apartment, should have been suppressed because probable cause for the issuance of the warrant was lacking. However, we find denial of the suppression motion to have been proper. The search warrant application was based on a "tip" furnished by an informant whose reliability was established by past information which had led not only to arrests, but to the seizure of heroin; in addition, his description of the drug trafficking being carried on in defendant's residence was founded upon personal observation and demonstrated sufficient knowledge of the criminal activity to dispel any worry that his information was based upon rumor or mere suspicion. Contrary to defendant's assertions, there is no requirement that to establish the reliability of an informant it is first necessary to demonstrate that information previously given by the informant resulted in a conviction (see *People v Slaughter,* 37 NY2d 596, 599; *People v Hanlon,* 36 NY2d 549, 554). Furthermore, police surveillance of defendant's residence by experienced narcotics officers over a period of several days during which time known drug users were observed entering and leaving the house at all hours, for stays of very limited duration, also provided a substantial basis for believing the informant and adequately corroborated the tip (*People v Slaughter, supra,* p 600). Also, the warrant application contains an averment that defendant was frequently seen scanning the area surrounding his residence with binoculars. These facts amply justified issuance of the warrant (see *People v Betts,* 90 AD2d 641, mot for lv to app den 58 NY2d 781).

Another of defendant's objections concerns the trial court's dismissal of two jurors after trial had commenced. In the early stages of the trial, the forelady of the jury advised the court that two members of the jury panel had reservations regarding the manner in which the proceedings were being conducted. An immediate *voir dire* was had at which the two jurors, in response to questions from the court and counsel, voiced objections to the mannerisms of the prosecutor, frequent Bench conferences, and the general course of the trial. Since they were basically suspicious of the judicial process and harbored a distrust of the judicial system, the court, over defendant's objection, removed them from the panel and substituted alternates in their places. CPL 270.35 permits discharge of jurors after trial has begun if: "the court [is satisfied] from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case". This standard is satisfied when it becomes obvious that the juror possesses a state of mind which would prevent the rendering of an impartial verdict (*People v Meyer,* 78 AD2d 662). Here, the jurors' admitted mistrust of the judicial process could easily have caused them to reach a verdict based not upon the evidence, but upon a jaundiced view of the system. Their removal, which was necessary to safeguard the integrity of the trial, has not been shown to have prejudiced defendant's rights in any substantial way. Reversible error is also seen in the trial court's refusal to prevent cross-examination of defendant concerning his 1959 conviction for possession of narcotics with intent to sell. An earlier *Sandoval* ruling by the court had prohibited the prosecution from exploring the nature of that conviction. However, at trial the court allowed cross-examination on the conviction on the ground that it could be used to prove the requisite element of intent to sell (see *People v Rose,* 84 AD2d 645, affd 57 NY2d 837). While this ruling may have been improper, it was harmless error for there was substantial evidence of defendant's intent to sell elsewhere in the record (*People v Murray,* 90 AD2d 640). Naomi Carrington, defendant's accomplice, had testified during the People's case-in-chief that defendant had sold her heroin earlier that same evening, and that over the preceding four months he had sold her heroin on at least four or five other occasions. The contraband seized by the police, and already before the jury, corroborated this testimony. Moreover, defendant subsequently denied ever having sold heroin during his lifetime. Once this obvious untruth was uttered, use of the 1959 conviction to impeach his credibility was appropriate. Thus, the circumstances of the 1959 conviction were properly brought before the jury as the result of defendant's attempt to use the *Sandoval* ruling as a sword as well as a shield (see *People v Addison,* 73 AD2d 790). Furthermore, the use of the 1959 conviction for impeachment purposes was not improper because of its alleged remoteness; the record indicated defendant has spent most of his life in prison since the 1959 conviction and when this fact is considered along with the discretion permitted the trial court, we find no error in the cross-examination (see *People v Shields,* 46 NY2d 764). We also note that defendant's prejudice claim is undercut by the fact that defendant in his direct testimony admitted to three prior convictions, including a felony conviction for burglary and the 1959 conviction. Nor do we find error in the trial court's permitting cross-examination concerning a 1979 narcotics arrest of defendant's claimed common-law wife, Essie Forte. A central part of the defense presented at trial was the allegation that defendant had been the victim of continual harassment by the Albany Police Department. To support this harassment charge, defendant relied in part upon a complaint he had filed with the NAACP in 1979 which allegedly stated he had been personally harassed. The prosecution contended that the complaint, filed shortly after Forte's arrest, was filed on behalf of Forte in an effort to provide

her with a defense to the 1979 charges and to repay her for testifying on defendant's behalf in a previous trial. Certainly, the facts surrounding the filing of the complaint, including Forte's arrest, could properly be the subject of cross-examination for they rebutted a major premise of defendant's harassment allegations that he had filed the complaint on his own behalf. This denial of an " 'affirmative fact which [defendant] has endeavored to prove'" is a proper use of rebuttal evidence (*People v Harris,* 57 NY2d 335, 345). Defendant's final significant objection relates to the court's failure to charge that Naomi Carrington was his accomplice as a matter of law. Instead, the court allowed Carrington's status to be decided by the jury. Carrington, who had been indicted along with defendant, entered a plea of guilty to reduced charges in return for her co-operation at trial. She testified that she had gone to defendant's apartment on the night of the police raid and had purchased two packets of heroin from him prior to their arrest. Given these facts, Carrington clearly was an accomplice as a matter of law (see *People v Rugg,* 91 AD2d 692). Failure to so instruct does not, however, constitute reversible error, for the jury was permitted to decide whether Carrington was an accomplice and the other evidence offered by the prosecution not only adequately corroborated her testimony, but evidenced clear proof of guilt. Finally, whether defendant's 1953 New Mexico conviction could be considered in determining his status as a persistent felon is an issue which has been previously ruled upon (*People v West,* 41 AD2d 987). We have considered defendant's other arguments and find them to be without merit. Judgment affirmed. Main, Yesawich, Jr., and Weiss, JJ., concur.

Mahoney, P. J., and Mikoll, J., dissent and vote to reverse in the following memorandum by Mahoney, P. J. Mahoney, P. J. (dissenting). We respectfully dissent from the majority's decision since, in our view, two errors committed during the course of the trial require reversal of defendant's conviction. The first error committed was the action taken by the trial court in dismissing two of the jurors after the trial had commenced. The majority correctly points out that the statutory ground for juror discharge contained in CPL 270.35 ("that a juror is grossly unqualified to serve in the case") is satisfied when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict. However, we fail to find proof in the instant record supportive of such a finding with regard to the two jurors who were dismissed. In fact, after extensive questioning by the trial court and counsel for both sides, the two jurors involved unhesitatingly stated that, although bothered by certain mannerisms of the prosecutor and other distractions which occurred in the courtroom, those feelings would not prevent them from being "fully fair and fully impartial between the parties" and rendering a verdict based solely on the evidence and the law. Their statements did not evince a jaundiced view of the judicial system and it was entirely speculative and without any basis in the record for the trial court to conclude that "it would be impossible for [the two jurors] under the circumstances here to just render the verdict based solely on the evidence and the law". It was therefore improper for the trial court to find that the two jurors were "grossly unqualified" and to dismiss them over defense counsel's objection. The prejudice which resulted from those erroneous dismissals stems from defendant's constitutional right to a jury trial (NY Const, art I, § 2). This right does not guarantee a trial by any jury, but rather a particular jury chosen according to law in whose selection defendant has had a voice (*Hildreth v City of Troy,* 101 NY 234; *People v Freistadt,* 23 Misc 2d 534). The trial court may not itself select the jury, either directly or indirectly, by dismissing as incompetent jurors who the law declares are competent (*Hildreth v City of Troy, supra,* p 239). Additional

error was committed by the trial court during cross-examination of defendant. A pretrial *Sandoval* ruling had indicated that defendant's credibility could be impeached, should he decide to take the stand, by introducing evidence of defendant's conviction of a felony in 1959 without mentioning the nature of the felony, which involved narcotics, or its underlying circumstances. The trial court went on to rule that the People could explore the nature of the 1959 conviction in the event that defendant denied, in an affirmative sense on direct examination, that he had ever been involved with drugs. When defendant did ultimately elect to take the stand in his own defense, the fact of the 1959 felony conviction was brought out by defense counsel on direct examination in a strategic attempt to minimize the damage that this fact would have on defendant's credibility. Obviously aware of the trial court's previous *Sandoval* ruling, however, defense counsel did not question defendant regarding whether he had ever been involved with drugs. On cross-examination, the trial court allowed the prosecution, over objection, to inquire into the circumstances underlying the 1959 conviction on a theory that such questioning was permissible under *People v Molineux* (168 NY 264) in that it was relevant on the issue of defendant's intent as an element of the crime charged. As hinted by the majority, this ruling was erroneous. While it is certainly true that evidence of prior criminal conduct can be introduced when it is relevant to one of the elements of the specific crime charged and is not being introduced to show the defendant's general propensity to commit crimes (see, e.g., *People v Vails,* 43 NY2d 364), this evidence will normally be introduced as part of the People's case and cannot be explored on cross-examination of a defendant who has not raised the subject on his direct testimony. Defendant in this case, having obtained a *Sandoval* ruling regarding his 1959 conviction, had the right to rely on that ruling. His decision about whether to testify in his own behalf should have been made without fear that the particular details of that drug-related conviction would be brought out on cross-examination so long as he did not deny any involvement with drugs on direct examination. Contrary to the position taken by the majority, the trial court's error in allowing this cross-examination was not rendered harmless by defendant's subsequent denial of ever having sold heroin during his lifetime. Since this denial was made in answer to a question asked by the prosecutor on cross-examination, it cannot be said that defendant was attempting to use his *Sandoval* ruling as a sword. Thus, a review of the record in this case demonstrates that the prosecution was effectively able to circumvent the trial court's *Sandoval* ruling by asking defendant about the particular details of his 1959 felony conviction. Even though the articulated reason for allowing this line of questioning was that it was relevant to the issue of intent as an element of the crime charged, the trial court compounded the error by instructing the jury on at least two different occasions that the circumstances underlying the 1959 conviction could be considered with respect to the issue of intent to sell *and defendant's credibility.* Assuming, *arguendo,* that the testimony elicited from defendant on cross-examination was probative of the crime charged, the trial court's instructions that the jury could use that evidence in weighing defendant's credibility was erroneous, extremely prejudicial and in direct contradiction to that court's prior *Sandoval* ruling. Accordingly, it is our view that the errors committed during the trial require reversal of defendant's conviction and a new trial.